FILED
US DISTRICT COURT CLERK
WESTERN DISTRICT OF KY
15 MAY 29 AM 8:43

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| KINDRED HEALTHCARE, INC. and REHABCARE GROUP, INC., | ) ) ) |
| Plaintiffs, | ) ) ) ) ) ) ) ) ) ) |
| v. | |
| HOMELAND INSURANCE COMPANY OF NEW YORK, | |
| Defendant. | |

Civil Action No. 3:15-cv-6133-CRS

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs, Kindred Healthcare, Inc. ("Kindred") and RehabCare Group, Inc. ("RehabCare") (collectively, the Kindred Policyholders), by their undersigned counsel, bring this action against Defendant, Homeland Insurance Company of New York ("Homeland"), and in support thereof, allege as follows:

### I.   NATURE OF THIS ACTION

1.   This insurance recovery action arises out of Homeland's failure to pay amounts due under an insurance policy Homeland sold to RehabCare, including various defense and settlement costs arising out of certain claims made against RehabCare alleging violations of the Junk Fax Prevention Act of 2005 ("JFPA"). Homeland has refused to defend or reimburse costs, expenses and damages incurred by the Kindred Policyholders in defending against JFPA claims that are owed by Homeland under its insurance policy, which provides "Occurrence-Based General Liability Insurance" coverage for "Personal Injury" arising out of "oral or written publication of material that violates a person's right to privacy." The JFPA claims against RehabCare allege violations of privacy rights covered by Homeland's policy.

2. Accordingly, the Kindred Policyholders bring this insurance coverage action against Homeland for declaratory judgment, damages for breach of contract, and statutory and exemplary damages for violations of the Kentucky Unfair Claims Settlement Act and common law bad faith. The Kindred Policyholders ask this Court to declare their rights and the responsibilities of Homeland under the primary general liability insurance coverage it sold to RehabCare.

## II. THE PARTIES

3. Plaintiff, Kindred Healthcare, Inc., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 680 S. 4th Street, Louisville, Kentucky 40202.

4. Plaintiff, Rehabcare Group, Inc., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 680 S. 4th Street, Louisville, Kentucky 40202.

5. Defendant, Homeland Insurance Company of New York, is an insurance company organized and existing under the laws of the State of New York with its principal place of business located at 150 Royall Street, Canton, Massachusetts 02021.

## III. JURISDICTION AND VENUE

6. The subject matter jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over Homeland by virtue of its business activities within the Commonwealth of Kentucky including the sale of insurance policies in Kentucky and its handling of claims made by policyholders located in Kentucky, including the subject of this civil action.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2), in that a substantial part of the events or omissions giving rise to Kindred's claims occurred within this District.

## IV. THE INSURANCE POLICY

9. RehabCare purchased from Homeland Health Care Organizations and Providers Professional Liability, General Liability and Employee Benefit Liability Policy No. MPP-3026-10 for the period May 1, 2010 through June 30, 2011, with limits of liability in the amount of $1,500,000 per occurrence and $5,000,000 in the aggregate, above a $500,000 per occurrence deductible (the "Policy"), attached hereto as Ex. "A."

10. The Policy obligates Homeland to pay "any Loss which the Insured is legally obligated to pay as a result of a covered Claim alleging ... Personal Injury that is caused by an Occurrence that takes place during the Policy Period ..." The Policy defines "Loss" as "any damages, settlements, judgments or other amounts ... in excess of the applicable deductible...." The Policy defines "Occurrence" with respect to Personal Injury as "injury, other than Bodily Injury, arising out of ... oral or written publication of material that violates a person's right to privacy."

11. The Policy further provides that "[a]ll Related Claims, whenever made, shall be deemed to be a single Claim...." The Policy defines "Related Claims" as "Claims for ... Personal Injury caused by an Occurrence, based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving same or related facts, circumstances, situations, transactions, or events or the same or related series of facts, circumstances, situations, transactions, or events, whether related logically, causally, or in any other way...."

12. The Policy was amended by Endorsement 29 to provide the Insured with the right to control its own defense, incur expenses, and conduct settlement negotiations, without a

requirement to obtain the insurer's written consent in advance. More specifically, the RehabCare Policy initially contained Section IV(D)(1), titled "Defense and Settlement," which purported to require written consent from the Underwriter prior to incurring expenses, making payments, admitting liability or settling Claims, and to provide the Underwriter the write to investigate, direct the defense and conduct settlement negotiations it deems appropriate. Section IV(D)(1) of the Policy was amended by Endorsement 14, however, to require, in addition to the above, the policyholder's written consent prior to any settlement: "The Underwriter will not settle any Claim without the written consent of Kat Ruth, Risk Management Manager, or Jeff Zadoks, Vice President and Corporate Controller, who shall have the authority to act for any Insured in connection with consenting to a settlement." Subsequently, the parties agreed to amend the Policy with Endorsement 29, effective May 1, 2011, stating: "[i]n consideration of the premium charged, Endorsement No. 14 to this Policy is deleted in its entirety and shall be of no force and effect from and after the effective date of this Endorsement." From that point forward, the Policy did not provide for control of claims by Homeland nor require its written consent to incur expenses or make settlements.

V. **THE JFPA CLAIMS AGAINST REHABCARE**

　　i. **The Pines Action**

13. Kindred defended a putative class action lawsuit brought in federal court against RehabCare, captioned *Pines Nursing Home, Inc. v. RehabCare Group, Inc. et al.*, No. 1:14-cv-20039, in the Southern District of Florida (the "Pines Action"), alleging violations of the JFPA. A copy of the Complaint filed in the Pines Action is attached hereto as Exhibit "B."

14. The plaintiff in the Pines Action alleged, in general, that certain JFPA violations occurred from approximately 2010 through the 2013. Accordingly, they sought certification of a class described in the complaint and monetary damages from RehabCare and Cannon and

Associates d/b/a Polaris Group ("Polaris"). At that time, Polaris was a subsidiary of RehabCare, though it was subsequently sold and is no longer a subsidiary of either Kindred or RehabCare.

15. Kindred retained the law firm of Broad & Cassel to defend RehabCare in the Fellen Action. The district court in the Pines Action ultimately denied the plaintiff's Motion for Class Certification on June 20, 2014, leading to a nominal settlement. In addition, Kindred incurred defense costs for the Pines Action in an amount far in excess of the Policy's $500,000 deductible.

16. Additionally, as part of its overall defense effort, RehabCare sought relief from the Federal Communications Commission ("FCC") in connection with the opt-out notice requirement rule of the JFPA. This effort succeeded in October 2014 when the FCC granted a retroactive waiver with respect to Polaris's alleged failure to comply with the opt-out notice requirements.

### ii. The Fellen Action

17. Following the resolution of the Pines Action, on December 30, 2014, Kindred was served with a second putative class action lawsuit alleging purported JFPA violations by RehabCare and Polaris, captioned *R. Fellen et. a. v. Cannon and Associates, d/b/a Polaris Group and RehabCare Group, Inc.*, No. 1:14-cv-02081, in the Eastern District of California (the "Fellen Action"). A copy of the Complaint filed in the Fellen Action is attached hereto as Exhibit "C."

18. The Fellen Action alleges similar violations of the JFPA on behalf of a putative class of plaintiffs as did the Pines Action, over a similar length of time.

19. Kindred retained Broad & Cassel to defend RehabCare against the Fellen Action in light of that firm's successful effort in the Pines Action in defeating class certification and settling with the remaining plaintiffs. The defense of the Fellen Action is ongoing.

## VI. HOMELAND'S WRONGFUL DENIALS OF INSURANCE COVERAGE

20. By correspondence dated May 14, 2014, Kindred gave notice of the Pines Action to Homeland on behalf of RehabCare and its subsidiaries.

21. In response to Kindred's notice of the Pines Action, Homeland reserved rights on June 23, 2014, three days after class certification was denied, citing several bases of potential defense, including Endorsement 14 to the Policy. The June 23, 2014 letter disregarded Endorsement 29, which deleted Endorsement 14. Among other things, this letter also alleged potential application of various policy exclusions and questioned whether the Pines Action presented a claim for Personal Injury caused by an Occurrence during the policy period.

22. Kindred confirmed the resolution of the Pines Action to Homeland and reiterated its request for insurance coverage for the defense and settlement of the Pines Action by letter dated November 7, 2014. Homeland responded by letter dated November 24, 2014, asserting additional purported reasons for reserving its rights and reiterating the language of Endorsement 14 to the Policy while again disregarding Endorsement 29.

23. By letter dated January 30, 2015, Homeland's outside counsel sought to further reserve additional rights against Kindred that it had not previously identified, and again quoted Endorsement 14 in support of its positions. The January 30, 2015 letter, for the third time, failed to even mention Endorsement 29, which deleted Endorsement 14. Although the January 30, 2015 letter focused on defenses concerning alleged late notice, "pre-tender" defense costs, and the timing of faxes in relation to the applicable policy period, Homeland stated it continued to reserve its rights regarding other "potential objections and defenses." Homeland took the position that, if any coverage did exist, the potentially covered amount did not exceed the Policy's deductible, such that nothing is owed to Kindred or RehabCare.

24. By letter dated February 23, 2015, Kindred provided Homeland with notice of the Fellen Action and advised that Polaris had been sold and was no longer its subsidiary. Kindred informed Homeland that the allegations in the Fellen Action were virtually identical to the allegations in the Pines Action. Additionally, Kindred requested approval of its choice of Broad & Cassel as defense counsel to defend RehabCare in the Fellen Action, based on that firm's successful defense of the Pines Action and its existing work and knowledge regarding the underlying claims and defenses, available documentary evidence and witnesses.

25. As with the Pines Action, Homeland has declined to defend RehabCare against the Fellen Action and refused to pay any defense expenses incurred by Broad & Cassel in the defense effort.

26. The Kindred Policyholders have repeatedly requested Homeland's approval of the defense fees and expenses incurred, but such approval has been unreasonably withheld.

27. Homeland has no right to control the defense of the underlying litigation and choose defense counsel, nor a right to require written pre-approval of all expenses, both based on the deletion of the "Defense and Settlement" condition in the Policy, and because of the conflict of interest created by Homeland's reservations of rights to deny and/or limit coverage.

28. Further, Homeland has failed to provide a substantive basis for withholding its approval of the defense costs incurred, other than its incorrect positions that the Policy wording requires pre-approval of all expenses and provides the insurer the right to control the defense and choose defense counsel. Homeland has not asserted that the defense provided to RehabCare was unreasonable, that the tasks performed by defense counsel were unnecessary, or that the potential exposure in the case did not justify the defense effort expended.

29. Moreover, Homeland has failed to allege prejudice caused to the defense effort resulting from alleged late notice or Kindred's control of the defense. With Kindred and RehabCare having successfully resolved the Pines Action after defeating class certification, no prejudice can be shown by Homeland. Indeed, the only prejudice Homeland has even attempted to suggest is a difference in billing rates that an alternative, hypothetical law firm may have charged. But, the rates charged by Broad & Cassel (and the total amount expended) are reasonable under the circumstances involving complex class action litigation in the healthcare field, and a mere difference in attorney rates does not constitute prejudice. In any event, Homeland has also refused to defend the Fellen Action for which it has neither alleged late notice nor sought to hire alternative counsel, and in which any alternative law firm would be required to expend (and waste) considerable sums to duplicate the knowledge gained by Broad & Cassel in defending the Pines Action.

30. Homeland has never retained an alternative choice of defense counsel to Broad & Cassel, nor has it suggested that Broad & Cassel is an unqualified or inappropriate choice of counsel for the defense of the underlying actions. At this time, Homeland has waived any right it may have to seek to displace the Kindred Policyholder's chosen counsel.

## COUNT ONE - DECLARATORY JUDGMENT

31. The Kindred Policyholders hereby repeat and re-allege each of the allegations contained in the preceding paragraphs as if the same were set forth herein.

32. The Kindred Policyholders have an actual and present controversy with Homeland regarding Homeland's liability under its Policy to pay defense and settlement costs arising out of the Pines Action and defense costs arising out of the Fellen Action. It is therefore appropriate for this Court to declare the rights of the parties.

33. This controversy is ripe and of sufficient immediacy to justify the issuance of a declaratory judgment.

34. The Kindred Policyholders are entitled to have the Policy interpreted in a reasonable manner that maximizes the available insurance coverage.

35. Under the circumstances, it is necessary and appropriate for the Court to declare the Kindred Policyholders' rights and Homeland's obligations under the Policy. Declaratory relief from this Court will resolve outstanding issues between the Kindred Policyholders and Homeland regarding the Kindred Policyholders' rights under the Policy.

### COUNT TWO - BREACH OF CONTRACT

36. The Kindred Policyholders hereby repeat and re-allege each of the allegations contained in the preceding paragraphs as if the same were set forth herein.

37. The Policy is a valid contract.

38. In return for premiums paid, Homeland agreed to pay for all Loss covered under the Policy, as well as Defense Expenses, which must be paid by Homeland in addition to the Policy's limit of liability.

39. The settlement of the Pines Action constitutes a covered Loss under the Policy that the Kindred Policyholders were legally obligated to pay as a result of a covered Claim alleging Personal Injury caused by an Occurrence that took place during the policy period. Additionally, the expenses incurred in defending against the Fellen Action and the Pines Action, and the related effort before the FCC, all qualify as Defense Expenses under the Policy.

40. The Kindred Policyholders have complied and/or substantially complied with all of the terms, provisions, and conditions precedent of the Policy.

41. The amount of Defense Expenses and covered Loss at issue in the underlying actions exceeds the applicable Deductible in the Policy, triggering Homeland's payment obligation.

42. Homeland has breached its contractual obligations to RehabCare by refusing to pay any Defense Expenses relating to the Pines Action or the Fellen Action and refusing to indemnify the Kindred Policyholders for any portion of the settlement of the Pines Action.

43. As a result of Homeland's breach of contract, the Kindred Policyholders have suffered damages.

WHEREFORE, the Kindred Policyholders request that the Court enter judgment against Homeland for actual money damages in excess of $75,000, in an amount to be determined at trial, for Homeland's breach of the Policy, including, without limitation, compensatory damages, consequential damages, prejudgment interest, post-judgment interest, attorney's fees and costs, and other such relief the court deems just and proper.

### COUNT THREE – BAD FAITH UNDER THE KENTUCKY UNFAIR CLAIMS SETTLEMENT ACT AND COMMON LAW

44. The Kindred Policyholders hereby repeat and re-allege each of the allegations contained in the preceding paragraphs as if the same were set forth herein.

45. Homeland's unreasonable refusal to pay Defense Expenses arising out of the Pines Action and Fellen Action and unreasonable refusal to indemnify any part of the settlement of the Pines Action under the Policy constitute violations of the Kentucky Unfair Claims Settlement Practices Act, KRS § 304.12-230 et seq, and bad faith under the common law.

46. Homeland is obligated to pay the Kindred Policyholders' claim under the terms of the Policy; Homeland lacks a reasonable basis in law or fact for denying the claim; and Homeland either knows there is no reasonable basis for denying the claim, or has acted with

reckless disregard for whether such a basis exists. Homeland's breaches of its duties to defend and indemnify are outrageous and not fairly debatable.

47. Homeland's coverage positions and unjustified delay in paying the Kindred Policyholders' claim are outrageous and the product of either intentional misconduct or reckless indifference to the rights of the Kindred Policyholders. Among other things, Homeland has failed to undertake a good faith investigation of the claim; failed to apply its Policy language to the facts in good faith; adopted strained and unreasonable interpretations of policy language while disregarding more reasonable interpretations that favor its policyholders; repeatedly refused to consider the impact of Endorsement Number 29 while relying on the deleted Endorsement 14; relied on late notice in the Pines Action while refusing to defend the indisputably timely-notified Fellen Action; baselessly objected to competent defense counsel and reasonable defense costs incurred in a successful defense effort; and persistently sought to avoid paying any amounts based on alleged notice and consent issues that admittedly caused no prejudice to the defense effort.

48. Homeland has knowledge of, or has recklessly disregarded, the fact that its actions are unreasonable.

49. Homeland's coverage positions and unreasonable actions in refusing to pay the Kindred Policyholders' claim violate the implied covenant of good faith and fair dealing and Kentucky law.

50. As a result, the Kindred Policyholders are entitled to all available rights and remedies permitted for the bad faith conduct of Homeland under the Kentucky Unfair Claims Settlement Act, and bad faith under the common law, including punitive damages, attorney's fees, and interest at the rate of twelve percent (12%) per annum.

WHEREFORE, Kindred requests that the Court enter judgment requiring Homeland to pay Kindred all monetary damages suffered by Kindred caused by Homeland's bad faith conduct, including without limitation, compensatory damages, consequential damages, punitive damages, prejudgment interest, post-judgment interest, penalty interest at the rate of 12%, attorney's fees and costs, and other such relief the court deems just and proper.

**JURY TRIAL DEMANDED**

Respectfully submitted,

John N. Ellison, Esq. (*pro hac vice motion pending*)
Luke E. Debevec, Esq. (*pro hac vice motion pending*)
Shruti Engstrom, Esq. (*pro hac vice motion pending*)
REED SMITH LLP
Three Logan Square
1717 Arch Street Suite 3100
Philadelphia, PA 19103
215-851-8100
Fax 215-851-1420
jellison@reedsmith.com
ldebevec@reedsmith.com
sengstrom@reedsmith.com

*Counsel for Kindred Healthcare, Inc. and RehabCare Group, Inc.*

Dated: 5/28/2015